We have a full day of arguments today, so we're going to try to hold the clock because we have another matter to attend to at 2 o'clock, and we need to confer afterwards. And so just a word of warning in advance, I guess, or ask for cooperation. First case that we have this morning is Sejka v. Vectrus Systems Corporation. It is dockets 18-1439 and 18-1459. Counsel, we are prepared to hear your argument. Good morning. May it please the court, Daniel Lula of Baker and Hostetler for Appellant Vectrus Systems Corporation. If it please the court, I would like to reserve three minutes for rebuttal. The district court erred in failing to grant Vectrus' renewed motion for judgment as a matter of law under Rule 50B as to the claims of plaintiffs Washer and Walker for one simple reason. These plaintiffs premised their claims throughout the case below on a theory of constructive discharge and only constructive discharge, not actual discharge, not actual termination, and not, as would be later presented, involuntary separation. Constructive discharge. The first and essential element of constructive discharge under both state and federal law is that the employee have resigned. Yet at trial, both Washer and Walker testified over and over that they did not resign, that they were laid off or otherwise terminated. Therefore, no reasonable jury could have found the first element of constructive discharge, resignation. Is it really that clear? I mean, they were told if you don't accept this reassignment, you will be terminated, right? And so they made a choice not to accept the assignment knowing what the result would be. Judge McHugh, in a traditional situation, I agree with you that if an employee is presented with a demotion and refuses the demotion knowing that it will result in termination, that can qualify as a resignation for constructive discharge. But here we had a different situation. The undisputed evidence, primarily from Vanola Scott, but I believe also confirmed by the plaintiffs themselves, is that their security investigator positions had been eliminated. They had been laid off from their security investigator positions. Those positions were gone. As Vanola Scott testified, the senior HR manager that made the decision to include them, those positions had been eliminated. I don't understand why that makes a difference. I guess I'm, that's where you lose me. Certainly, Judge Martin. They still had a decision to make. Regardless of whether their positions were terminated, the choice was still the same for them. Take a demotion or you leave. The choice is there and that choice is what is akin to the resignation. I understand the question. Here, it wasn't a demotion. It was an offer of alternative employment. That alternative employment happened to be at a lower level and at a lower pay. But it was not a demotion from security investigator to biometric clerk. Rather, the employees had been laid off from security investigator positions. But isn't that a question of fact here? Aren't the plaintiffs here arguing that that was intentionally a lower level of pay, intentionally at a far off location or a less desirable location? And doesn't that all play into the facts related to constructive discharge that the jury eventually found against your client? I think that when a plaintiff, as this court recognized in the Romero case, that when a plaintiff characterizes his or her separation as a termination, as a layoff, and resolutely states, I didn't quit, I didn't resign, that there can be no question of fact. First of all, Romero's unpublished, so we're not bound by that, right? Absolutely true, but persuasive. Also, if you look at the testimony, I don't think it's that clear. If you look at Plaintiff Waschler, I don't really know how to pronounce that, but... Wascher. Wascher? Wascher. Okay. Wascher and Walker. He says, you feel you have no recourse, there's nothing you can do except either take the harassment that you are receiving or leaving. That sounds a lot like constructive discharge to me. Isn't it a jury question? Again, Your Honors, I think that because their testimony in other places was unequivocal, that they were laid off, that they did not resign. If it's unequivocal in one place, but equivocal in another place, you've got an issue of fact, don't you? The district court didn't think so, at least when we argued our post-trial motion. The district court understood that right down the line, it was we were terminated, we were terminated, we were terminated. In fact... The district court is the one that made them make a choice, right? Weren't they arguing termination? They were arguing resignation. The attorneys for plaintiffs had claimed that they had satisfied the prong of resignation. The plaintiffs themselves testified... You mean constructive discharge? Correct. Okay. Because the fact is, and that's another argument that the plaintiffs make here is, what difference does it make? To prove retaliatory discharge, you need a discharge. And how you get there, if you weren't discharged, is through a constructive discharge, which is harder to prove than discharge. I don't understand how ultimately this makes a difference. You seem to be recognizing they were discharged. They were actually discharged, which is the first thing the jury wouldn't have had to find had everyone conceded that. Well, I think there's a couple of issues there. The first is, what does it matter? Let me tackle that first. An election of theories between constructive discharge and actual termination does make a huge amount of difference. Why? Because the defendant has a right to understand what kind of case they're defending against, frame their questions, their arguments, and the thrust of their case in a particular way. And again... If the evidence would have come in as to retaliatory discharge, which is the plaintiff's argument, it's all relevant to motive, whether it was relevant to the constructive discharge or relevant to the ultimate question, which was, were they discharged in retaliation for their protected conduct? But if that evidence is coming in either way, how does that impact the defense? Plaintiff's counsel, Mr. Martin, first of all, acknowledged that that would not be the  That if, in fact, the plaintiffs had elected a theory of actual discharge, said we were laid off, but we were included in the layoff for reasons of animus or for reasons of retaliation, that none of the bad history, none of, in Mr. Martin's words, none of the bad conduct would have come in. None of the nine months of, we were in outlying bases. One of them was Rocket City. I had nightmares. The food wasn't good. The lights went off. None of that would have come in, because the focus would have simply been on Vanola Scott's decision in June and July of 2014, whether to include Mr. Washer and Mr. Walker in the layoff. So an entire body of, I believe I referred to it below in the hearings on the post-trial motions as sexier jury appeal material was able to come in, and that was prejudicial. That did matter. The second, and I think more importantly, is defense counsel, principally myself, once we had heard that the theory was constructive discharge and only constructive discharge repeated over and over in the complaint, at the pretrial conference, in the pretrial order, on June 5th at trial, after several hours to consider the matter, to be told it's constructive discharge and only constructive discharge, our focus shifted away from those June and July layoff decisions. We still touched on them. We still introduced evidence. But we focused on the elements of constructive discharge. And so our defense case was framed around that. Again, although the district court ultimately, we believe, got it wrong in denying our Rule 50B motion, at the hearing, and that transcript shows, the district court fully understood the kind of prejudice that ensued. And when plaintiff's counsel said, oh, we simply proved the more difficult burden. Well, actual termination is not, to borrow a criminal law term, a lesser included offense in constructive discharge. They're completely different things. A constructive discharge is an employee who involves an employee who resigns because conditions have become objectively and subjectively intolerable. Actual discharge focuses on the motivations and mental state of the company side decision maker who included them in layoffs. So we defended against one case. And respectfully, I think we won it. I think, as the court said in Romero, I understand it's persuasive, but the court said, I'm paraphrasing, there is no greater evidence of whether a plaintiff employee has resigned than the plaintiff's own statement. Resignation is uniquely within the employee's mental state. The testimony in Romero is much more clear, though, isn't it? In our case, it's the portions that you call unequivocal, and then there are others that are unequivocal. But the ones that you call unequivocal, largely the termination sort of language is in the body of the question rather than out of the witness's mouth. Does that matter? Well, I think ordinarily that is what happens on cross-examination. And admittedly, most of the good testimony for us came out on cross-examination. However, there simply is no other real evidence of resignation. There's no resignation document. There's no email from Walker and Washer saying, I resign. They themselves never said, we marched into Vanola Scott's office and said, we resign. The only thing that they can point to is this declination of alternative employment. And I think that- Which has been equated by many courts with essentially a forced resignation. Colorado apparently has not been so specific, but other courts have. When it's a demotion, Your Honor. But here, our position, and I think it's supported by the facts here, is that this was not a demotion. This was not the kind of situation where you're currently a security investigator, that position is going to remain in effect, but HR is demoting you, Mr. Washer, to biometric clerk. Rather, I think everybody agrees here, it's undisputed. The floor eliminated those security investigator positions. My client could have simply not offered the alternative employment, not offered the biometric clerk position, and said, You're on a plane home. We're going to hire into the biometric clerk position from somebody else. We're going to publish it. No, they were offered alternative employment. So I think it take, those facts certainly take it out of the typical, which I agree with you in other cases, could constitute a resignation, the typical demotion being declined situation. Well, and you look at all of the facts, right? Yes. And that's what the, we have to decide whether any reasonable jury could have decided that this was a constructive discharge, looking at all of the evidence, not just a portion of the plaintiff's testimony. And one of the things the plaintiff said is they kept getting transferred to less desirable locations, bases that were subject to more heavy rocket attacks and various things. And that looking at end, after they were transferred, then those bases would close and they'd get transferred somewhere else. I mean, at some point, all of those facts come into the mix. And the question is, could the jury have found constructive discharge here? Well, I think the question has to be, could the jury have found that they resigned? Could the jury have found that they resigned? That's the first question. The allegedly intolerable conditions come second. So I think the first question is, could a reasonable jury have found that they resigned? I think given their unequivocal testimony on cross-examination, which the district court recognized, they said terminated, terminated, terminated. Not once, even indirect, not once even indirect, I think, did either Washer or Walker say, I quit, I resigned, this is what I said. I have that Walker agreed that he terminated, he agreed in response to a question that he terminated his employment on July 14th. And then he represented to a state agency that his position had been eliminated. And Washer completed an exit questionnaire that your company gave him, asking him his primary reason for leaving, and he responded, personal issues slash reasons. Why did you give him an exit questionnaire if you were uncertain about what his grounds for leaving were? I'm at my three minutes, but your Honor, I will certainly answer that question. It's standard company practice that whenever someone is separated from employment, they're given that exit questionnaire. I think that his statement there still does not state, I quit and I resigned. Thank you. Thank you. May it please the Court, I'm Stephen Hartman, and we have Ray Martin, we're co-counsel for the plaintiffs. I'll start with this constructive discharge issue. Vectris does not challenge the jury's special verdict findings that the plaintiffs were whistleblowers, that they were engaged in protective activity, that Vectris knew they were whistleblowers, that Vectris retaliated against the two for terminating them, that Vectris retaliated against Walker and Washer by making conditions so intolerable they had to resign. And they did all of this with actual malice. None of that's being challenged today. They don't challenge the jury instructions conceding that the jury was properly charged on constructive discharge. The only thing they're challenging is this issue of whether they resigned or whether they were terminated. And they also have an issue about whether they were at will, whether the exception applies at all. Right, I'm just... We didn't talk about that, but yeah. We can talk about that in a second if that's okay. Okay, so the evidence is very strong that there was plenty of evidence to support the jury's verdict. Vectris very quickly learned that these four plaintiffs were whistleblowers. Within four months, they were all gone from Bagram, the main base. Two terminated and two transferred to the forward bases. Now all the bases are in a war zone, so they're all dangerous. But the forward bases are really dangerous. I mean, Rocket City is its nickname. The country manager said, I had to get Walker out of Bagram because he was a pain in the behind. That country manager was removed by the military. The new country manager came in and said, Washer is never coming back to Bagram because he tried to take the company down. What about counsel's point that these jobs expired and that it would have been perfectly permissible to say your job is expired, thank you for your service, goodbye? So that's just not... First of all, it's a red herring and not based on the record. Both. It's a red herring because Vectris employs these four plaintiffs, not Floor. If Floor reduced the head count, it was on Vectris to decide who to move, who to keep, who to transfer, who to demote. Floor didn't come in and say, Walker and Washer, you are gone. And on top of that... So are you saying that they, for discriminatory reasons, they chose to eliminate their positions? That they didn't have to eliminate their positions? They did it because this was convenient for their plan? I'm not understanding your argument on that. There were openings at Bagram. Okay. So they chose... For the same positions? Yes. Okay. The record is that from David Cleary, who was the Department of Defense supervisor, he was asking for Walker and Washer to come back by name. They were desperate for more... The supervisor, Robin, said there were openings. And he saw the PERSTAT reports that showed that there were openings. And when Mr. Lula questioned him and couldn't shake him from his testimony, Mr. Lula said, well, we'll be seeing those PERSTAT reports next week. But you know what? They never did. They never introduced any PERSTAT. That's the daily staffing reports. They never introduced them. Those documents were within Vectris' control. If they really supported their position, they would have brought them in and shown that there were no openings. They didn't. Instead, they relied on Vanola Riley's testimony. Her credibility was destroyed at trial. She lied repeatedly. She lied about whether she had seen the witness statements that she got from Dubai. She lied about whether she knew the plaintiffs were whistleblowers. She lied about whether she was the one who made the decision on transferring Walker and Washer in the first place. The jury found that her actions were retaliatory and taken with actual malice. So the jury absolutely could disregard everything that she said. And I think they did. On top of all of that, her testimony was, well, there were openings at Bagram before we gave them the ultimatum. And then later that year, there were 14 more openings that came up. But at the moment that we gave them the ultimatum, there were no openings. Trust me, I'm not going to show you the PERSTAB reports, but trust me, Vectra is also a 7,500 person company. They had plenty of base operations providing these services around the world and could have put these men into position. Can I talk to you about the whole issue of actual discharge versus constructive discharge? And we have a strange scenario here because normally it's the employer who's saying, you resigned, we didn't discharge you, and you weren't constructively discharged. You resigned, therefore there's no action, there's nothing adverse, nothing happened to you. Here we have the employer saying, we admit she was discharged, which wouldn't that have been easier for you to prove? Because the jury wouldn't have had to find constructive discharge at all. They simply would have accepted that there was a discharge and moved on to retaliatory motive. And the appellant suggests that you wanted to have to prove constructive discharge, which is odd to me, but because that would allow you to present a different case essentially is what I gathered from the brief. Well, we presented it this way from day one, because that's what we believe the facts were. They were given offers of demotion, they declined it. We're aware of the case law that that's a constructive discharge. The evidence would have been the same. Wouldn't it have been easier had you just accepted, yes, they were discharged, but they were discharged for retaliatory reasons. It would have, except we were worried about the issue of them coming back and saying, well, how can you say you have damages? You quit. You resigned. And we would have been faced with that. I mean, that's generally the way it works. We would have been whipsawed on it, and that's why we didn't do it. It was not a strategic trial decision to expand the scope of the case. With all respect to Mr. Martin, he was under fire and speculating about what would have or could have happened if we hadn't put it this way. It was what the facts supported, Your Honor. But in fairness, if everyone was focused on just why they were discharged, everyone agreed they were terminated, then you wouldn't have had as much leeway on evidence trying to show that the conditions were horrific for these employees. It would have been true, but the same evidence would have showed retaliation for the whistleblowing. Because the whistleblowing retaliation happened, you know, the whistleblowing started in September and October and then carried through with their strategy. You put them on the forward bases that are about to be closed, and then, no surprise, they're closed, closing. And so then, oh, they're the last ones in. Well, I guess we have to terminate them. So all of that would have come in to show their motive and retaliation. It wouldn't have changed the trial at all. That's a tougher argument for you, though, isn't it, to have to say, all right, well, even if they weren't constructively discharged, all this evidence would have come in so there was no prejudice. Because you asked the jury to make these findings, and you presented this evidence, presumably towards the constructive discharge elements that the jury had to find. I mean, that would be asking us to just disregard sort of a portion of your case. I mean, that seems to be your secondary argument, which is, well, it doesn't matter if they were discharged. Either way, the evidence would have come in. Well, that's what the judge's district court gave an alternative holding. He told us to pick. We picked. We proved it. And the jury found that it was constructive discharge. But I believe the judge giving an alternative basis for upholding the verdict was right to do so. And of course, this court can affirm on an alternative basis as well. It doesn't matter. The question is voluntariness, not technically the label of whether they are resigned or terminated. Let me, we didn't really touch on this in the opening argument, but was Vectris entitled to JMOL on the claim for wrongful discharge in violation of public policy under Colorado law because these plaintiffs had employment, one-year employment contracts? No, Your Honor. They just ignored the controlling Supreme Court decision of Martin Arrieta versus Lorenz, which expressly made clear when it defined the doctrine that the doctrine applies to employees, whether at will or otherwise, whether their employment be for a designated or unspecified term. And the Supreme Court cited and discussed the Lathrop case, which involved a union employee that was allowed to pursue a constructive discharge case and made clear in that decision that employees, employers cannot contract away public policy rights. And that also is in the Maori versus UPS case. So in this idea that, oh, it's labeled an exception to the at-will doctrine, well, that's because most people are, don't have contracts. But the scope of the doctrine is defined by the Supreme Court in its seminal decision. They don't even talk about that in their briefs. Well, the problem, what they do say is that the Lorenz case that you're relying on, they did make the statement that you just pointed out, but the court also in several places recognizes, it repeatedly says it's an exception to employment at will. And that's throughout several cases. I understand your argument, but these employees weren't employees at will. They did have a contract. It wasn't akin to the collective bargaining agreement, but they did have a contract. So if we disagree with you and we suggest it is only an exception to employment at will, how do you respond? They effectively were at will, Your Honor. They had no protection. But we don't have a finding from the district court. Nobody argued that, as far as I know, or at least I don't think the district court said. I find that they were effectively. I think it's in the judge's decision that effectively they were at will because they had no real protection. How can they be at will? They had one year contracts and even though they could be terminated at the convenience, they still had to give 30 days written notice, which that's not at will. It's not much protection. It's not much protection, but it's not at will. At will is any time, any or no reason. This, you had to give them 30 days written reason of convenience. Correct. May I go back and make a point with respect to the constructive district that I didn't make? That's all right. Vekras's argument is centered around misrepresenting the record. They say repeatedly in their brief and today that Walker and Washer testified that they were terminated. That's not correct. Their testimony was they were laid off. So I want that to be clear. Well, can you explain the significance of that distinction? Yes. The decision that they made to return down the demotion under the circumstances, knowing that would result in being separated, that was the constructive discharge. That was the act that happened. And the facts of what happened and why and their decision were that they resigned and they were constructively discharged at that point in time. Whether Vekras actually implemented the separation as a layoff or in some other administrative way doesn't change the fact that they had already effectively resigned and been constructively discharged. The timing matters. And the characterization that, oh, they were laid off, that's just a legal characterization. I mean, they're not lawyers. I mean, it's not a fact like, for example, in the Romero case where that was really a fact. I don't know if you want me to talk about the Romero case, but it's so different than our situation. It was literally a supervisor employee meeting where the supervisor said, sign this blank discipline form or leave. And he said he shook his hands and he left. And then he testified, I did not resign. I was terminated. That was the testimony. Well, Romero, you also had the very odd situation of the jury finding both constructive and actual discharge and not understanding their instructions. So it was really dicta because they found for constructive discharge anyway. I'd like to at least mention the waiver argument. Vekras absolutely waived this argument as to the statutory claim. And it wasn't inadvertent. They did it four times expressly on the record. JA 8119, 8476, 9477, 9485. This was not inadvertent. It was a strategic decision by them to try to get an advantage with this motion that they were trying. So now they're coming back. They can't have it both ways. They cite no cases allowing and excusing failure to raise an argument in your Rule 50A motion. And the Tenth Circuit cases are very strong and require waiver in this case. But at the time that they waived, was it apparent that you were pursuing a constructive discharge claim as opposed to an actual termination claim? Yes. Yes, this was right before the jury. Wasn't this before the jury instruction was approved for constructive discharge? The waiver started during the jury instruction conference and then happened two separate sessions and then finally in a submission they filed. So it was all through the process. I see that my time is almost up. We didn't talk about it at all. But as to the new trial issue, I would say the proof is in the pudding. There was a fifth plaintiff. The jury heard all the evidence. And the fifth plaintiff, they found in favor of Eckers on the fifth plaintiff. On the cross-appeal issue, the statutory interpretation, it's purely a question of law. We think the district court made a mistake. All we're asking is that this court use fresh eyes and look at the language. Because it covers Vekras. Vekras is a person awarded a contract from a covered entity. All right. Your time has expired. Thank you, Your Honor. Thank you. Counsel, you're going to get a minute leeway since your opposing counsel went over a minute. We'll give you that. But we're going to hold you to that. Thank you very much. Will that be reflected on the clock? Thank you. Okay. Rebuttal by nature is a bit scattered, Your Honor. So I do want to touch on the issue of waiver under Rule 50A. The cases that were cited by plaintiffs for waiver hold that the argument must be asserted in a Rule 50A motion in order to then be renewed in a Rule 50B motion. I would submit it's very clear here that we raise the insufficiency of the evidence for the first prong of resignation in our Rule 50A motion. Fully and clearly, they were on notice of that. As to the state law claim, but that's a wholly separate claim. Your federal statutory claim was a blind claim. That is correct. But as Judge McHugh correctly pointed out, the jury verdict form had not yet been finalized. We did not yet know that plaintiffs were going to rely solely on constructive discharge, also for their 10- excuse me, Walker, for his 10 U.S.C. 2409 claim. And once the jury verdict form came out and we saw that that was the case, we would have an absurd result here if the Rule 50B motion were granted as to the state law claims, but not the federal claim. I want to tackle the issue of the evidence for the positions being eliminated, and that would, Judge Moritz, take us out of the typical situation of a demotion and a rejection of a demotion. Some aspersions were just cast on Vanola Scott, but the reality is that the only evidence that was presented as to the elimination of positions came through Vanola Scott, and thus it was undisputed. Plaintiffs had no firsthand knowledge of the layoff orders coming down from floor. Ample, ample documentation was produced, and I would just point the Court for later review, if possible, to Joint Appendix 8660 to 8672, which is Vanola Scott's testimony about the elimination of the security investigator positions and the offer of completely separate alternative employment. And I do want to talk about the at-will issue, and I think that, respectfully, Mr. Hartman misquoted Martin Marietta v. Lawrence. It did not hold that the public policy claim is available to someone who is at-will or otherwise. Rather, at page 109, what the Court said is an employee, whether at-will or otherwise, should not be put to the choice of either obeying an employer's order to violate the law or losing his or her job. That's perfectly consistent with the idea that the public policy claim fills the hole for at-will employees or otherwise employees, i.e., those employed pursuant to a contract, already have protection, a breach of contract claim. And so I think you can't just extract employees at-will or otherwise. I think, Judge Moritz, you were correct. I believe, Judge McHugh, you said this as well, that the cases are simply replete with references to this being an exception to the at-will doctrine. Of course, the Lathrop case that I mentioned, which proceeded and was relied upon in Lawrence, specifically said it doesn't matter if you're an at-will employee. It implies if you have a contract. It's a public policy. It implies across the board. That was a Colorado Court of Appeals case. And it was relied on in Lawrence. I'm not sure how you get past that. Well, I think that the law developed since then. I think, number one, Lawrence is a more clear enunciation than that prior Lathrop case. But second, after Lawrence, we have Coors and we have Crawford Rehabilitation, I believe, that again describe it. But none of those cases are cases where they have an employment contract and they're saying this doctrine doesn't apply. They're at-will cases and they're citing Lawrence selectively for what's before them. But Lawrence, you cited part of it. But it also says it would be obnoxious to the interests of the state and contrary to public policy and sound morality to allow an employer to discharge any employee whether the employment be for a designated or unspecified duration on the grounds that the employee declined to commit perjury and act specifically enjoined by statute. I mean, it seems to me it covers both from when the doctrine was developed in Colorado. I think what the court is discussing there is that there needs to be a remedy for both. I absolutely agree. There needs to be a remedy for both. We do not want employees employed pursuant to a contract to be fired for reasons of whistleblowing and not have a remedy. But they have a remedy already. Their remedy is breach of contract. And I point the court, again, to Dahl. I know that it's unpublished but persuasive. I think the district court in Dahl exhaustively examined this and explained why employees with an employment contract are already protected and thus don't need a public policy claim. This court did affirm for substantially those reasons. I do want to turn very quickly to the- I'm afraid we're out of time. You're actually a minute over and I try to be fair to both sides. Thank you very much. Thank you both for your arguments. The case is submitted.